IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MURRAY ZUCKER,

    Plaintiff,

  v.

ZORAN CORPORATION, ET AL,

    Defendant.

No. C 06-04843 WHA

**ORDER GRANTING MIDDLESEX RETIREMENT'S MOTION FOR APPOINTMENT AS LEAD COUNSEL**

## INTRODUCTION

Pursuant to the Private Securities Litigation Reform Act of 1995 (PSLRA), this order appoints Middlesex Retirement as the lead plaintiff for the above-named action. Accordingly, this order **GRANTS** Middlesex Retirement's motion for appointment as lead plaintiff, and **DENIES** Menorah Mivtahim's motion for appointment as lead plaintiff, **DENIES** Murray Zucker's motion for appointment as lead plaintiff. This order also sets forth the procedure to be used for the selection and approval of class counsel.

## FACTS

This is a putative class action that arises from allegations of stock-options backdating and alleges violations of 15 U.S.C. 14(a) and 20(a). Zoran Corporation markets high-performance digital audio and video imaging applications for purchase by original equipment manufacturers of digital televisions, DVD products, digital cameras, digital printing, multimedia phones and IP cores (Compl. ¶ 2). Its stock is traded publicly on the NASDAQ.

1    Plaintiffs allege that Zoran unlawfully granted backdated stock options to its senior
2 executives from 1998 to 2001 (*id*. at ¶ 28). Companies frequently grant stock options to their
3 employees to align employees' incentives with those of the company, that is, if the stock price
4 rises, so does the employee's compensation. Backdating occurs when stock option dates are
5 retroactively changed to reflect the lowest price during the period in which the recipient can
6 exercise the option. The recipient can then exercise the option at the lowest price in a given
7 period, meaning that the recipient will make more money than they otherwise would. As a
8 result, plaintiffs allege, Zoran and its officers released false and materially misleading
9 information in its proxy statements (*id.* at ¶ 29–30).

10    Murray Zucker filed a complaint on August 10, 2006. He later published notice of his
11 complaint in Business Wire on August 23, 2006 (Bishop Decl. Exh. A). In response, two
12 groups filed motions to be appointed lead plaintiff for this action. The first was by Murray
13 Zucker and Gilbert Key, the second was by Middlesex Retirement System and Menorah
14 Mivtahim Mutual Fund. The Court requested that each lead-plaintiff candidate individually file
15 a questionnaire about their qualifications, their experience in managing litigation, their
16 transactions in Zoran stock, and any potential conflicts related to the instant securities case.
17 Zucker, Middlesex, and Menorah each submitted the questionnaire. Gilbert Key filed a notice
18 of withdrawal from the motion to be appointed lead plaintiff on December 5, 2006.

19    A hearing on the appointment of lead plaintiff was held on December 7, 2006. Murray
20 Zucker and a representative from Menorah both appeared in court; Middlesex was represented
21 by counsel. Candidates were questioned on their qualifications.

22    Middlesex is a public pension fund that manages over $700 million in assets for over
23 15,000 members (Middlesex Quest. 3). Middlesex purchased 27,344 shares of Zoran between
24 January 2003 and November 2004. It no longer holds a position in Zoran, but alleges that it
25 suffered a loss of $190,749.20 (Glancy Decl. Exh. C). Middlesex did not provide information
26 on how it calculated its losses.

27    Menorah is a group of mutual funds focused on retirement and pensions based in Tel
28 Aviv, Israel that manages over $1 billion in assets (Menorah Quest. 3). Together its funds

2

1  purchased 14,900 shares of Zoran stock between September of 2003 and July of 2005. It
2  alleged losses of $57,609.01 (Glancy Decl. Exh. C).

3  Murray Zucker is an individual private investor (Zucker Quest. 4). He currently owns
4  5916 shares of Zoran that he received pursuant to a merger between Zoran and Nogatech in
5  October 2001 (Bishop Decl. Exh. C, Zucker Quest. 4). He has not alleged a specific amount in
6  losses.

**ANALYSIS**

The PSLRA aims to prevent "lawyer-driven" securities litigation by placing a real party-in-interest in charge of the litigation. This statutory responsibility now resides in the lead plaintiff, who acts as a fiduciary for all members of the proposed class. The lead plaintiff must provide fair and adequate representation and management to obtain the largest recovery for the proposed class consistent with good faith and meritorious advocacy. Having a single lead plaintiff has in the past proven advantageous. A single lead plaintiff speaking on behalf of the class reduces potential conflicts in deciding litigation and settlement strategy. Also, having a single lead plaintiff means that a single entity has sole responsibility and accountability to the class.

Under the PSLRA, the Court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be the most capable of adequately representing the interests of the class members in accordance with this subparagraph." 15 U.S.C. 78u-4(a)(3)(B)(i). The PSLRA creates a rebuttable presumption that the most adequate plaintiff should be the plaintiff who: (1) has brought the motion for appointment of lead counsel in response to the publication of notice; (2) has the "largest financial interest" in the relief sought by the class; and (3) otherwise satisfies the requirements of FRCP 23. 15 U.S.C. 78u-4(a)(3)(b)(I)(aa)–(cc). The above presumption may be rebutted only upon proof that the presumptive lead plaintiff (1) will not fairly and adequately protect the interests of the class or (2) is subject to "unique defenses" the render such plaintiff incapable of adequately representing the class. 15 U.S.C. 78u-4(a)(3)(B)(iii)(II)(aa)–(bb).

3

1   The PSLRA sets up a three-step inquiry for appointing a lead plaintiff. First, a plaintiff
2   files the action and posts notice, allowing other lead-plaintiff candidates to file motions. Next,
3   the district court considers which of those plaintiffs has the largest financial interest in the
4   action, and whether that plaintiff meets FRCP 23's requirements. Finally, other candidates have
5   the opportunity to rebut the presumption that the putative lead plaintiff can adequately represent
6   the class. *In re Cavanaugh*, 306 F.3d 726, 729–730 (9th Cir. 2002).

### 1.   LARGEST FINANCIAL INTEREST.

In the Ninth Circuit, the test for which plaintiff has the largest financial interest is strictly applied. *Id.* at 729. The PSLRA does not indicate a specific method for calculating which plaintiff has the "largest financial interest." *See* 15 U.S.C. 78u-4(a)(3)(B)(iii)(I)(bb). In this district, two judges have equated "largest financial interest" with the largest amount of potential recovery. *See In Re Critical Path, Inc. Sec. Litig.*, 76 F. Supp.2d 1017, 1030 (N.D. Cal. 1999); *Weisz v. Calpine Corp.*, 2002 WL 32818827, (N.D. Cal. 2002).

This case is somewhat unique under the PSLRA as it alleges only violations of 15 U.S.C. 14(a) and 20(a). At oral argument, candidates were asked how they would calculate damages in this action. All admitted that the "fraud premium" calculations under *Dura Pharmaceuticals, Inc. v. Brudo*, 544 U.S. 336 (2005), do not apply to claims under 15 U.S.C. 14(a). Counsel for Zucker argued that the most applicable measure of damages would be the difference between the inflated value of the stock because of the backdating and the stock's actual value. Counsel for Middlesex argued that a more appropriate measure would be loss-of-bargain damages as applied in merger proxy cases plus compensation for any adverse consequences of keeping on the board those insiders who were involved in the alleged back dating. These are admittedly very different damages measures. Under either of them, however, the potential recovery increases with the number of shares a plaintiff bought. Thus, the candidate with the largest potential recovery would be the candidate who had bought the largest number of Zoran shares. Here, that is candidate is Middlesex who is presumptively the lead plaintiff.

### 2.     REQUIREMENTS OF TYPICALITY AND ADEQUACY UNDER FRCP 23.

The district court must then inquire whether the putative lead plaintiff satisfies the requirements of FRCP 23(a). *In re Cavanaugh*, 306 F.3d at 730. The inquiry focuses on the "typicality" and "adequacy" requirements, as the other requirements in FRCP 23 of numerosity and commonality would preclude class certification by themselves. *Id.* at n5. "Once [the court] determines which plaintiff has the biggest stake, the court must appoint that plaintiff as lead, unless it finds that he does not satisfy the typicality or adequacy requirements. . ." *Id.* at 732.

The "typicality" requirement is satisfied when the named plaintiffs have (1) suffered the same injuries as class members; (2) as a result of the same course of conduct; and (3) their claims are based on the same legal issues. *Armour v. Network Assoc., Inc.*, 171 F. Supp.2d 1044, 1050 (N.D. Cal. 2001). As a stockholder, Middlesex suffered the same injuries as the class members, namely buying Zoran stock an inflated price that did not truly reflect the company's compensation costs. Its injuries arose from the same course of conduct, the alleged backdating by the Zoran board and insiders. Finally, the claims are based on the same legal issues. Both Middlesex and the Zucker complaint allege violations under Section 14(a) and Section 20(a).

Zucker alleges that Middlesex's claims are not typical of the class. Middlesex bought its shares in January 2003 and sold it in November 2004, so it would only have standing to bring a Section 14(a) claim and seek remedies such as recission for the proxy statements in that period. Zucker overlooks the fact that the PSLRA premises selection of the lead plaintiff on the size of the financial stake, not on the most adequate complaint filed. Even though the lead plaintiff cannot personally assert every claim brought by the class, the presumption still stands. *In re WorldCom Sec. Litig.*, 210 F.R.D. 267, 272 (S.D.N.Y. 2003). Middlesex's claims are still typical of the class although it may not have standing to bring every claim alleged by the class.

The "adequacy" requirement is satisfied when the proposed lead plaintiff does not have interests antagonistic to the proposed class. *In re Emulex Corp. Secur. Litig.*, 210 F.R.D. 717, 720 (C.D. Cal. 2002). Here, Middlesex has the same interest as the rest of the class. They wish to recover against Zoran for the alleged damages suffered because of back dated stock options.

5

1  Middlesex's appearance at the hearing only through counsel and not through a personal
2  representative reflects adversely on its bid to be named lead plaintiff. Failure to attend the
3  hearing, however, is in part excusable because candidates were only given one week's notice of
4  the desirability of their appearance at the hearing. Middlesex's answers to its lead-plaintiff
5  questionnaire were otherwise satisfactory. It has stated that it will be present at hearings and
6  depositions, and has agreed to perform due diligence in selecting class counsel. Zucker has not
7  shown that Middlsex would not adequately represent the class, so the presumption that
8  Middlesex should be named lead plaintiff still stands.

### 3. ATTEMPTS TO REBUT PRESUMPTION.

Other plaintiffs may rebut the presumption that the putative lead plaintiff has satisfied the requirements of typicality and adequacy. *Cavanaugh*, 306 F.3d at 730. As mentioned above, Zucker has argued that he would be a more adequate lead plaintiff as he has standing to challenge more of the allegedly fraudulent proxy statements. Unfortunately for Zucker, the inquiry under the PSLRA does not demand that the district court choose the *most* adequate lead plaintiff. *Cavanaugh*, 306 F.3d at 720. The other candidates have not shown that Middlesex is subject to any conflicts of interest that would prevent it from fulfilling its fiduciary responsibility to the class. Accordingly, Middlesex Retirement System's motion to be appointed lead plaintiff is **GRANTED**.

### PROCEDURE FOR SELECTING AND APPROVING CLASS COUNSEL

Under the PSLRA, "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. 78u-4(a)(3)(B)(v). Selection and approval of class counsel are important responsibilities for the lead plaintiff and the court. The selection and approval require an assessment of the strengths, weaknesses and experience of counsel as well as the financial burden – in terms of fees and costs – on the class. *Wenderhold v. Cylink Corp.*, 191 F.R.D. 600, 602–03 (N.D. Cal. 2000).

Any important decision made by a fiduciary should be preceded by due diligence. A lead plaintiff is a fiduciary for the investor class. No decision by the lead plaintiff is more important than the selection of class counsel. Consequently, the lead plaintiff should precede

6

1 his or her choice with due diligence.  The extent of such due diligence is a matter of judgment
2 and reasonableness based on the facts and circumstances.

3 The lead plaintiff should immediately proceed to perform their due diligence in the
4 selection of class counsel, and to interview appropriate candidates, and through counsel, move
5 for the appointment and approval of their selected counsel no later than **JANUARY 4, 2007**.  The
6 motion should be accompanied by declarations from the lead plaintiff explaining the due
7 diligence undertaken by each with respect to the selection of class counsel.  The declarations
8 should also explain why the counsel selected was favored over other potential candidates.  The
9 declarations should be filed under seal and not served on defendants.  The motion for approval
10 of lead plaintiff's choice of counsel, however, should be served on defense counsel.  No hearing
11 will be held on the motion unless the Court determines that it would be beneficial.  Once class
12 counsel is approved, the first order of business will be to file a consolidated complaint.  This
13 will be done **NO LATER THAN 28 DAYS** from the date of the order approving class counsel.

14 This appointment is conditioned on Middlesex certifying in writing, within seven
15 calendar days that it has read this order, the case management order setting a case schedule, and
16 that is willing and able to meet the schedule and its fiduciary obligations.

18 **IT IS SO ORDERED.**

20 Dated:  December 11, 2006

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE